Donald **STEPHENS**, Petitioner–Appellee and Cross–Appellant,

v.

John **THOMAS**, Warden, Respondent–Appellant and Cross–Appellee.

Nos. 93–2206, 93–2223.

United States Court of Appeals, Tenth Circuit.

March 9, 1994.

Rehearing Denied April 13, 1994.

we must assume that they were proper.

Bill Primm, Asst. Atty. Gen. (Tom Udall, Atty. Gen., with him on the brief), Santa Fe, NM, for respondent-appellant and cross-appellee.

Joseph W. Gandert, Asst. Federal Public Defender, Albuquerque, NM, for petitioner-appellee and cross-appellant.

Before TACHA, HOLLOWAY and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

The Warden of the State of New Mexico appeals the district court's grant of habeas corpus, 28 U.S.C. § 2254, to Mr. Stephens. The district court determined that Mr. Stephens' good time credits were forfeited without procedural or substantive due process. Mr. Stephens cross-appeals challenging the district court's rejection of his claims under the Equal Protection Clause and the Ex Post Facto Clause. Our jurisdiction arises under 28 U.S.C. §§ 1291, 2253 and we reverse.

*Background*

Mr. Stephens was convicted of first degree murder and sentenced to life imprisonment. He was also convicted of armed robbery and sentenced to a consecutive ten- to fifty-year term. He has been incarcerated since 1978. On April 30, 1984, after having served six years and four months on his life sentence, Mr. Stephens was paroled "in house" from his life sentence to his armed robbery sentence. This parole date was the result of using good-time credits to reduce the legislative ten-year parole eligibility minimum for life sentences. On November 20, 1986, Mr. Stephens was notified that his conditional

parole date on the armed robbery conviction was set for November 24, 1987, and he would then be released.

On November 20, 1987, however, the Parole Board rescinded both the life sentence parole and the conditional armed robbery parole. While it had been common practice to reduce the minimum sentences of life terms with good-time credits, the Parole Board was notified on that day by the Attorney General that the ten-year minimums for life sentences could not be reduced. This adjustment was made, however, only to the sentences of those inmates who had not yet been released from prison. Prisoners who were released from incarceration before they finished serving their ten-year minimums did not have their paroles revoked.

Mr. Stephens contended that he was penalized retroactively by an ex post facto law, his procedural and substantive due process rights were violated, and the different treatment of released and detained prisoners violated the Equal Protection Clause, all in violation of the U.S. Constitution. The district court determined that the procedural and substantive due process claims were the only ones with merit and granted the writ, ordering Mr. Stephens "unconditionally released unless the parole board determines conditions of release within 90 days." Aplt.App. at A–25. We stayed the district court's judgment pending appeal.

We address Mr. Stephens' claims each in turn, thereby reaching all arguments raised on appeal and cross-appeal. All of the issues are questions of law which we review de novo. *See Lustgarden v. Gunter,* 966 F.2d 552, 553 (10th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992).

*Discussion*

### I. Ex Post Facto Clause

██ A law violates the Ex Post Facto Clause when it punishes behavior which was not punishable at the time it was committed or increases the punishment beyond the level imposed at the time of commission. *See* U.S. Const. art. 1, § 10, cl. 1; *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). This provision does not prohibit, however, the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication. *See Cortinas v. United States Parole Commission,* 938 F.2d 43, 46 (5th Cir.1991); *Glenn v. Johnson,* 761 F.2d 192, 194–195 (4th Cir.1985) (holding no ex post facto violation where agency conformed to Attorney General opinion correcting misapplication of statute limiting parole until minimum had been served); *Caballery v. United States Parole Commission,* 673 F.2d 43, 47 (2d Cir.) *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

Before 1955, the pertinent good time statute did not benefit those sentenced to life imprisonment. *See Welch v. McDonald,* 36 N.M. 23, 7 P.2d 292, 294 (1931). In 1955, the New Mexico legislature passed provisions restricting parole for prisoners sentenced to life to those who have served at least ten years. N.M.Stat.Ann. § 41–17–24(4) (Michie 1953). The good time statutes then in effect, N.M.Stat.Ann. §§ 42–1–54, 42–1–55 (Michie 1953), reduced maximum sentences and minimum sentences to allow earlier parole eligibility. *See Coutts v. Cox,* 75 N.M. 761, 411 P.2d 347 (1966). Despite the clear prohibition on affording prisoners with life sentences the benefits of good time before their first ten years, the Department of Corrections began applying the good time statute to life sentences. This practice continued until the Attorney General notified the Department that this exercise was beyond the Department's authority and was an erroneous interpretation of the law.

We have held that when the current interpretation of a statute is foreseeable, there can be no Ex Post Facto Clause violation. *Lustgarden v. Gunter,* 966 F.2d 552, 554 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 624, 121 L.Ed.2d 556 (1992) (holding the plain language of the statute dictates the revised interpretation and therefore it is foreseeable). We agree with the district court that the language "prisoners sentenced to life imprisonment shall become eligible to appear before the parole board after they have served ten years" foreseeably sets a mandatory minimum. Magistrate's Amended Proposed Findings ¶ 16 at 8.

Mr. Stephens relies on *Knuck v. Wainwright,* 759 F.2d 856 (11th Cir.1985), in support of his argument that the new interpretation violates the Ex Post Facto Clause because the previous interpretation was "reasonable." The legislature in *Knuck,* however, expressly delegated to the Department of Corrections the authority to construe the rules, rendering its determinations somewhat legislative in nature. The New Mexico legislature has granted the Department of Corrections no such power here. The Attorney General's opinion highlights the Department's limited authority in this case. The *Knuck* court also cited legislative provisions which directly and expressly supported the first interpretation given by the Department of Corrections. No such clear support exists in this case.

Because the Department of Corrections revoked Mr. Stephens' erroneous parole as an immediate result of the Attorney General's directive, and the correct interpretation was foreseeable, there is no ex post facto violation.

## II. Due Process

■ A state inmate's due process rights are implicated only when a state's actions impinge on a protected liberty interest. *Vitek v. Jones,* 445 U.S. 480, 488–90, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980). At the time of Mr. Stephens' conviction, a prisoner serving a life term possessed no such interest in good time credits during the first ten years of his sentence. *See* N.M.Stat.Ann. § 41–17–24(4) (Michie 1953). The state's previous practice of misapplying the law does not change this. *See Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981) (holding common practice insufficient to create liberty interest, mandating inquiry into statutes defining authority of department in question). The revocation of good time credits from a life term prisoner who has served less than ten years of his sentence, therefore, does not implicate the Due Process Clause. Accordingly, the district court's finding that the state acted arbitrarily in revoking Mr. Stephens' good time credits was unwarranted, and the court's subsequent determination that this constituted a violation of Mr. Stephens' due process rights is erroneous.

## III. Equal Protection

Mr. Stephens argues that refusing to apply his good time credits, while declining to revoke the paroles of those erroneously released inmates whose ten-year minimums still had not expired, violates equal protection. Mr. Stephens has not shown, however, that he is similarly situated with those who were released. *See Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *United States v. Woods,* 888 F.2d 653, 656 (10th Cir.1989) ("If the groups are not similarly situated, there is no equal protection violation"), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990).

■ However, even assuming Mr. Stephens is in the same class as parolees who were released from prison altogether, his equal protection claim does not succeed. In the absence of a fundamental right or membership in a protected class, where the state has a rational basis for treating the classes differently, the Equal Protection Clause is not violated. *Edwards v. Valdez,* 789 F.2d 1477, 1483 (10th Cir.1986).

The state advanced the rationale that it was reasonable not to rearrest parolees who had successfully reintegrated into society, citing *Johnson v. Williford,* 682 F.2d 868, 871 (9th Cir.1982) (erroneously paroled prisoner permitted to remain out of prison because his successful reintegration into the community did not seriously threaten the public interest). The state further argued that there is no way of knowing for a fact that Mr. Stephens will not pose such a danger. Therefore, the state contended, any difference in class treatment by the state's decision not to release Mr. Stephens early and in violation of the law was rationally related to protecting the public safety. The district court accepted this rational basis. We find no error given the courts' narrow scope of review in this area. *See Younger v. Colorado State Bd. of Law Examiners,* 625 F.2d 372, 377 (10th Cir.1980).

REVERSED.