PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 7/10/96**

TENTH CIRCUIT

_____

SHANE ERIC LASITER,                    )
                                       )
      Petitioner-Appellant,            )
                                       )
    vs.                               )      No. 95-2165
                                       )
JOHN THOMAS, WARDEN; ATTORNEY          )
GENERAL OF THE STATE OF NEW            )
MEXICO,                                )
                                       )
      Respondents-Appellees.           )

_____

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-92-732-JC/DJS)

_____

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for
Petitioner-Appellant.

William McEuen, Assistant Attorney General (Tom Udal, Attorney General of New
Mexico, with him on the brief), Santa Fe, New Mexico, for Respondent-Appellee.

_____

Before BRORBY, BARRETT and LIVELY[*], Circuit Judges.

_____

LIVELY, Circuit Judge.

_____

[*] The Honorable Pierce Lively, United States Circuit Judges for the Sixth Circuit, sitting by designation.

No. 95-2165
*Lasiter v. Thomas*

_____

Shane Eric Lasiter, a New Mexico state prison inmate, appeals from the district court's dismissal of his petition for a writ of habeas corpus. The issues on appeal relate to the state's refusal to reduce his life sentence below the statutory minimum of 30 years on the basis of good time credits. Upon consideration of the briefs and oral arguments of counsel, together with a careful review of the record, we affirm the judgment of the district court.

**I.**

On Sunday, March 8, 1981, Lasiter, who was barely 17 years old, and two other teenagers robbed Richard and Karen Bejerano at the Bejerano's place of business. The three individuals took over $100 in cash and the keys to the couple's automobile before killing the husband and injuring the wife with handguns. The individuals fled with the Bejerano's car. Lasiter and one other robber were arrested driving the Bejerano's car. Lasiter was charged with first degree murder, attempted murder, armed robbery, and motor vehicle larceny. After first pleading not guilty, Lasiter entered into a plea agreement, in which he pled guilty to all counts. He was sentenced to life imprisonment, plus five years' parole on the murder charge; nine years' imprisonment plus two years' parole each on the attempted murder and the armed robbery charges; and 18 months'

2

imprisonment plus one year of parole on the motor vehicle larceny charge. All sentences

were to be served concurrently.

## A.

The relevant New Mexico statute in effect on the date of sentencing provided that

persons sentenced to life imprisonment became eligible for parole after serving 30 years

of their sentence. N.M. Stat. Ann. § 31-21-10(A). However, the practice in effect at the

time of Lasiter's sentencing was to grant life-sentenced prisoners parole in less than 30

years based upon good time credit. In fact, following his incarceration, the date for

Lasiter's parole hearing was accelerated based upon good time credit. In 1986, the New

Mexico Attorney General issued an opinion that indicated § 31-21-10(a) precluded life-

sentenced prisoners from receiving good time credit, but Lasiter continued to receive

good time credit until July 1988, when his original parole eligibility date in the year 2011

was reinstated.

More than two years after reinstatement of his original eligibility date, Lasiter filed

the first of two unsuccessful petitions for habeas corpus with the New Mexico courts.

After he had exhausted all available state remedies, Lasiter filed a petition for a writ of

habeas corpus in the United States District Court for the District of New Mexico. A

magistrate reviewed the state court records and, without holding an evidentiary hearing,

issued proposed findings and a recommendation that the petition be dismissed with

prejudice. The district court adopted the magistrate's findings and recommendations, and dismissed the petition.

B.

On appeal Lasiter asserts that he has a liberty interest in his good time credits and the state violated his due process rights by restoring his original parole eligibility date. He also contends that the district court erred in failing to hold an evidentiary hearing to determine whether his plea was involuntary and whether he received effective assistance of counsel. He claims that he alleged facts which, if proven, would entitle him to a hearing on both issues.

The state responds that prisoners have no liberty interest in good time credits that is protected by the Due Process Clause. The state also argues that Lasiter did not allege facts sufficient to require a hearing and failed to establish that the district court abused its discretion in declining to hold such a hearing. Regarding the involuntary plea claim, the state asserts that Lasiter is not entitled to a hearing based solely on his unsupported allegations that contradict his statements at the plea hearing and notes that Lasiter failed to present any independent evidence, such as third party affidavits, to support his claims. In response to the ineffective assistance of counsel claim, the state contends that Lasiter's counsel was effective, and even if counsel tendered ineffective assistance, Lasiter could not demonstrate prejudice.

## II.

The record from the state court in which Lasiter was arraigned and pled guilty discloses a very careful effort by the judge to determine that Lasiter, who was represented by appointed counsel, understood the consequences of his guilty plea. Both Lasiter and his attorney signed a "Plea Disposition Agreement" which set forth the maximum sentence for each crime to which Lasiter pled guilty. After the arraignment, the sentencing judge signed a document entitled "Guilty Plea Agreement," which memorialized the proceedings at which the plea was formally made and accepted. Both Lasiter and his attorney signed certifications at the bottom of this document.

The transcript of the arraignment contains the following colloquy, which took place before the court accepted Lasiter's guilty plea:

> The Court: I don't know if your lawyer explained it to you, but I think you are going to serve 30 years before you are eligible for parole. Unless the law might get changed. Do you understand that?
> Lasiter: Yes Sir.
>
> * * *
>
> Q: Has anybody threatened you in any way to get you to plead guilty to these charges?
> A: No Sir.
> Q: Except for this plea agreement, have any other promises been made to you to get you to plead to these charges?
> A. Just the fact that I can be paroled in 30 years. That I may not come out that good at trial.

5

Q:      That's the law as I understand it also, as to a life sentence.  If you enter pleas of guilty to these charges, will it be free and voluntary on your part?

A:      Yes Sir.

Q:      Are your pleas being made with full knowledge of the possible penalties?

A:      Yes Sir.

In spite of this record, which indicates that both the judge and his counsel advised him that he would not be eligible for parole until he had served 30 years, Lasiter contends that he understood at the time that the 30 year minimum was subject to reduction for good time credit.  Both in his objections to the magistrate judge's report and recommendation and in his brief to this court Lasiter stated that the judge, the prosecutor and defense counsel all "understood" that the 30-year minimum was subject to reduction for good-time credit.  Yet, Lasiter filed no affidavits or other evidence in support of this claim; only his own affidavit, which flatly contradicts the record.  We were informed at oral argument, that the prosecutor who represented the state in the plea proceedings is available to supply an affidavit if he did indeed have such an understanding.  Lasiter's counsel did not dispute this statement or enlighten the court on the availability of the judge who took the plea.

## III.

As Lasiter's counsel concedes, his due process argument is foreclosed by this court's decision in *Stephens v. Thomas*, 19 F.3d 498 (10th Cir.), *cert. denied*, 115 S. Ct.

6

516 (1994), a habeas corpus case from New Mexico. The *Stephens* court held that at the time of conviction a defendant sentenced to life does not possess a liberty interest in good time credits even though the state has previously followed the practice of misapplying the statutory requirement by awarding such credits. *Id.* at 501.

## IV.

We review the district court's denial of an evidentiary hearing under an abuse of discretion standard. *Lucero v. Kerby*, 7 F.3d 1520, 1522 (10th Cir. 1993); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## A.

Lasiter contends that his guilty plea was neither intelligently nor voluntarily made because his attorney told him his actual incarceration time would be cut to as little as 15 years by application of good time credits, and that everyone understood this to be the case. He asserts that the district court committed error by not granting him an evidentiary hearing on this claim. He relies primarily on *Blackledge v. Allison*, 431 U.S. 63 (1977), in support of his position. This reliance is misplaced.

A careful reading of *Blackledge* supports the district court's decision, not Lasiter's argument. *Blackledge* arose at a time when North Carolina courts made very little record of guilty plea proceedings, and plea bargaining was not well established as a "visible practice." *Id.* at 76-78. In *Blackledge*, the Supreme Court held that a claim based on

7

events alleged to have occurred outside the courtroom, and upon which the record casts no light, require an evidentiary hearing unless the allegations are so vague or conclusory as to permit summary disposition. *Id.* at 72-73. This holding mirrored the facts in the case before the Court.

Thus, the *Blackledge* Court upheld the court of appeals' reversal of summary dismissal of the prisoner's habeas corpus petition on the basis of the sketchy record from the state court. Nevertheless, the Court pronounced the general rule where a habeas petitioner seeks relief based on claims that are contradicted by the record:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted). Furthermore, in discussing recent statutory reforms leading to a more complete record in plea-taking proceedings, Justice Stewart wrote: "Especially as it becomes routine for prosecutors and defense lawyers to acknowledge that plea bargains have been made, such a contention [that statements made in the proceedings were untruthful] will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances." *Id.* at 80, n.19.

The record of the plea-taking in *Blackledge* and in the present case bear little

resemblance to each other. Nothing in the state court record in *Blackledge* directly refuted the claims of the petitioner. In the present case, just the opposite is true. It is clear that Lasiter understood he would have to serve 30 years before becoming eligible for parole. In fact, the only promise he adverted to when questioned by the judge was a promise that he could be paroled in 30 years. He chose to plead guilty rather than risk the possibility that he might not "come out as good at trial." The plea agreement provided that the 19½ years' imprisonment for the other three charges would be concurrent to the life sentence. He was correct in assuming that if he were found guilty on all counts at trial, the sentences could be made to run consecutively and he might be facing 19½ years after serving the minimum 30 years for murder.

This court has interpreted *Blackledge* to permit summary disposition of habeas corpus petitions based on claims of unkept promises and misunderstanding when the court record refutes the claims. In *Phillips v. Murphy*, 796 F.2d 1303 (10th Cir. 1986), the court upheld the district court's denial of an evidentiary hearing on a claim that the defendant pled guilty because he misunderstood the consequences of his plea. The court found the petitioner's claims "wholly incredible" in light of the detailed state court record. *Id.* at 1305.

Given the record from the state court and the lack of any evidence to support Lasiter's claim, which squarely contradicts that record, the district court did not err in

failing to grant Lasiter an evidentiary hearing on the claim that his plea was involuntary. Lasiter was bound by his "solemn declarations in open court" and his unsubstantiated efforts to refute that record were not sufficient to require a hearing. This case does not involve "the most extraordinary circumstances."

**B.**

Lasiter also appeals from denial of an evidentiary hearing on his claim of ineffective assistance of counsel.

To be entitled to a hearing on this claim, Lasiter must have alleged facts which, if proven, would establish he received ineffective assistance of counsel. Thus, Lasiter was required to make credible allegations his "counsel's performance was deficient" and "that the performance prejudiced [him]." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, he must have made a credible claim that "counsel's representation fell below an objective standard of reasonableness" and that but for this ineffective assistance the result would have been different. *Id.* at 688, 694. To succeed in demonstrating prejudice Lasiter must have shown that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Lasiter failed to demonstrate the required reasonable probability. In fact, the record indicates that

Lasiter knowingly decided not to risk a trial with its possibility of a longer period of imprisonment.

This court has specifically stated "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.), *cert. denied*, 114 S. Ct. 407 (1994ê). This court has also stated that there is no prejudice from counsel's inaccurate sentence or parole predictions where the court cured the defect by providing the proper information. *Worthen v. Meachum*, 842 F.2d 1179, 1184 (10th Cir. 1988), overruled on other grounds by *Coleman v. Thompson*, 501 U.S. 722 (1991).

In light of the state court record, Lasiter's claim that his attorney misinformed him concerning the effect of good time credits, and that he would not have pled guilty if he had been advised correctly is "wholly incredible." Lasiter stated on the record that he pled guilty because by doing so he could be paroled in 30 years, whereas a trial might result in a total sentence that would require that he serve more than 30 years. This statement demonstrates that his accurate knowledge, not misinformation, was the basis for Lasiter's decision to plead guilty. His claim of prejudice did not meet the *Strickland* standard.

On the entire record we conclude that the district court did not abuse its discretion

No. 95-2165
*Lasiter v. Thomas*

by declining to hold an evidentiary hearing on either of Lasiter's claims.

**AFFIRMED**.