**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RANDY GLEN PENSE,

Petitioner-Appellant,

v.

JOHN SHANKS, Warden; and
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

Respondents-Appellees.

No. 97-2166
(D.C. No. CIV-95-671-JP)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner appeals the district court's denial of his petition for habeas relief, filed pursuant to 28 U.S.C. § 2254. In April 1982, petitioner pled guilty in New Mexico state court to first degree murder, motor vehicle theft, credit card theft, fraudulent signing of a credit card slip, possession of a firearm after conviction of a felony, and armed robbery. Petitioner received a sentence of life plus ten years. In March 1995, after exhausting his state court remedies, petitioner filed the underlying habeas proceeding in federal court seeking to set aside his guilty plea and challenging the revocation of good time credits. The only matters raised in the district court that are of concern on appeal are petitioner's allegations that his plea was not knowing and voluntary due to the following errors of his trial counsel: (1) counsel failed to communicate with petitioner or investigate the facts of the case; (2) counsel advised petitioner to plead guilty to avoid the death penalty when, in fact, the circumstances of the case did not support imposition of the death penalty; (3) counsel failed to seek a competency evaluation of petitioner despite his knowledge that petitioner was taking psychotropic drugs; and (4) counsel told petitioner that he could receive good time credits that would make him eligible for parole in ten years on his life sentence.

After conducting a limited evidentiary hearing at the direction of the district court judge, the magistrate judge issued a report in which he recommended that the habeas petition be dismissed. The district court agreed

with the recommendation, and dismissed the petition.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

The record before us paints the picture of a criminal defendant who was determined to plead guilty to the charges against him.  Petitioner was arrested on November 3, 1981, after killing his good friend, William Monnereau, taking his wallet, and stealing his car.  Two months later, petitioner sent a letter to the district attorney in which he said that he wanted to plead guilty to the charges against him.  Petitioner recounted in the letter that, at his first meeting with defense counsel on November 5, he expressed a desire to plead guilty to all the charges, except the armed robbery charge.  Petitioner said he then reiterated his desire to plead guilty at a meeting with counsel on November 25.  "To this," petitioner related, "John Bogren said he will not let me plead guilty to a murder charge."[1]  R. Vol. III, Letter of January 9, 1982, at 3.

Petitioner also said he sent a letter to Bogren in December and "again expressed to him in that letter that I did not want to do anything except plead guilty . . . .  That I wanted to plead guilty because I am guilty and that I wanted to get this over with, get my money, addresses and other property [which had been seized at the time of petitioner's arrest] and start doing my time in peace."  Id.

---

[1]     John Bogren, of the public defender's office, was the lead defense attorney for petitioner.

at 4. Petitioner said he wrote Bogren a similar letter on January 2, 1982. Petitioner related that he told Bogren that "if I was forced to have a trial that each time I got the chance to open my mouth I was going to plead guilty, because I am guilty, and see no reason for a trial or tieing up the court with any other pre-trial motions and procedures." Id. at 5.

Petitioner explained that he was writing directly to the district attorney because Bogren had not responded to his requests to plead guilty. Petitioner discussed the events underlying the charges against him and said he was "confessing to murder, possession of firearm by felon, firearm enhancement, unlawful taking of motor vehicle, theft of credit card, fraudulent use of credit card, larceny $100-2,500, habitual criminal, and taking $5-$6 from victims person after I murdered him, purchasing a firearm as a convicted felon on parole." Id. at 6. Petitioner explained: "All I want to do is plead guilty without a plea-agreement except to have my money and things returned to me the morning before I do. I'm not asking for any reduced charges or smaller sentences in exchange for the plea. I will deserve every day I get and I will in no way try to appeal or bother with the courts for any reason afterwards." Id. at 5. Petitioner concluded the letter by asking the district attorney to let him plead guilty.

The district attorney sent a copy of petitioner's letter to defense counsel, who filed a motion in limine to preclude admission of the letter at trial. On

-4-

April 26, 1982, the trial court held a hearing on the motion in limine, which it denied. Because petitioner was still insisting on pleading guilty, Bogren then engaged in oral plea negotiations with the assistant district attorney. On April 29, the court conducted a formal plea hearing, at which petitioner executed a written plea agreement in which he pled guilty to all counts charged, in return for a sentence to life plus ten years and the district attorney's promise not to pursue a habitual offender charge. After accepting petitioner's plea, the trial court immediately sentenced petitioner in accordance with the plea agreement.

Petitioner now seeks to set aside his guilty plea on the ground that his counsel's assistance was constitutionally ineffective. "Performance by defense counsel that is constitutionally inadequate can render a plea involuntary." Romero v. Tansy, 46 F.3d 1024, 1033 (10th Cir. 1995). To establish a claim of ineffective assistance of counsel, petitioner must show both that his counsel's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that his counsel's performance was prejudicial, see id. at 693. To satisfy the "prejudice" prong, petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

We turn first to petitioner's claim that his counsel was ineffective because he did not investigate the factual basis of the charges against petitioner, he did not file any motions, except the motion in limine, and he did not confer with petitioner about the proceedings. "The adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own actions or inaction." United States v. Miller, 907 F.2d 994, 998 (10th Cir. 1990). Thus, in evaluating Bogren's conduct, we must keep in mind petitioner's own statements that he informed defense counsel of his desire to plead guilty from the outset and that he adamantly repeated this desire to counsel on numerous occasions.

At the evidentiary hearing, Bogren admitted that he had few meetings with petitioner and that he did not interview any witnesses listed by the government or assign one of the office's investigators to petitioner's case. Bogren explained, however, that there were no witnesses to the crime, he had read the police reports and other materials supplied by the prosecution, and he had spoken with petitioner about his version of events. Based on the information he had, Bogren testified that he thought petitioner had a good defense to first degree murder. Bogren admitted that he filed no notice of intent to raise an insanity or diminished capacity defense, but said he did not intend to rely on either defense.

Bogren and petitioner gave conflicting testimony as to the content of their communications. Bogren said that petitioner had told him his side of the story

and that he, Bogren, had explained to petitioner the nature of the charges against him and the possible penalties. Bogren testified that he sent petitioner copies of police reports and other discovery materials, and that he advised petitioner that a case could be made for second degree, rather than first degree, murder. Petitioner, on the other hand, testified that he never got to tell Bogren his whole story, that Bogren did not send him copies of discovery materials, and that Bogren did not explain the charges to him.

Unfortunately, the magistrate judge made no findings as to whose testimony on these matters was the more credible. The magistrate judge did find, however, that Bogren advised petitioner not to plead guilty. Absent clear error, we must accept those factual findings of the magistrate judge that are based on live testimony presented at an evidentiary hearing. See Romero, 46 F.3d at 1028.

Moreover, petitioner stated in his letter to the district attorney that he wanted to plead guilty because he felt he was guilty and he just wanted to get the criminal proceedings over with and begin serving his sentence. Under the circumstances, the record does not support petitioner's contention that he would not have pled guilty but for counsel's failure to investigate his claims, interview witnesses, file motions, or communicate more frequently with petitioner. Without the necessary showing of prejudice, petitioner cannot prevail on this claim.

Petitioner next challenges the voluntariness of his plea on the ground that he pled guilty only because Bogren advised him he should do so to avoid the death penalty. The magistrate judge, after hearing the testimony of both petitioner and Bogren, found that Bogren did not advise petitioner to plead guilty to avoid the death penalty. This finding is supported by the record and is not clearly erroneous. Therefore, this second challenge to petitioner's plea also fails.

We turn, then, to petitioner's argument that his counsel erred in failing to obtain a competency evaluation before petitioner pled guilty. Petitioner testified that, when he was incarcerated after his arrest in November 1981, the prison physicians immediately put him on a regimen of medications for seizure disorder and anxiety, consisting of Dilantin, Haldol, Cogentin, and phenobarbital. Petitioner explained that he previously had been treated with these medications while in prison in 1979. Petitioner testified that the medications made him feel calm and relaxed. He said they made him feel like a robot: he knew where he was, but he did not necessarily know what was happening. Petitioner testified that he had been taking some form of Haldol, which is a psychotropic drug, since he was about sixteen, but that he was not taking any medications at the time he committed the criminal offenses at issue.

Petitioner introduced into evidence a report of a mental evaluation conducted in connection with his 1979 prosecution. The report discussed

petitioner's psychiatric history, discussed the results of a battery of tests, and diagnosed petitioner with (1) anxiety neurosis, with mixed features of hysteria and explosiveness, and (2) alcohol addiction. The report stated that petitioner was then currently on a regimen of Haldol and that he "says that he feels terrific and does not feel anxious or like he 'needs a drink.'" R. Vol. I, Doc. 8, Ex. L, at 4. The report ultimately concluded that petitioner was competent to stand trial.

Petitioner testified that he sent a copy of this 1979 evaluation to Bogren in December 1981, and that he told Bogren of the medications he was currently taking. Bogren, in turn, testified that he discussed petitioner's prior mental health problems with him, and that "[t]here was nothing about Mr. Pense's communications with me, his appearance or anything, that would lead me to conclude that he didn't know what was happening. I believed that he was competent." R. Vol. II, at 46.

The magistrate judge found that Bogren had no reason to order a competency evaluation of petitioner. The magistrate judge noted that petitioner was taking the same drugs in 1979, when he was found competent to stand trial, as he was in the months preceding his guilty plea, and that petitioner had not demonstrated any change in his mental health status subsequent to the 1979 evaluation. Further, the magistrate judge found credible Bogren's testimony that nothing about his interactions with petitioner suggested that petitioner did not

understand the proceedings. We note that petitioner's letter to the district attorney also reveals an understanding of the nature of the proceedings against him. The magistrate judge's determination that Bogren did not act unreasonably in failing to obtain a competency evaluation of petitioner prior to his guilty plea is fully supported by the record.

Finally, petitioner contends that he pled guilty based on Bogren's erroneous advice that he could accrue good time credits towards his life sentence that would make him eligible for parole in ten years. Pursuant to New Mexico statute, a defendant given a life term on a capital offense must serve a minimum of thirty years. See N.M. Stat. Ann. § 31-21-10A. At the time petitioner pled guilty, it was common practice for the New Mexico Department of Corrections to reduce the minimum sentences of life terms with good time credits. See Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir. 1994). Indeed, petitioner was given good time credits on his life sentence by the New Mexico authorities. In 1986, however, the New Mexico Attorney General issued an opinion stating that, under a proper construction of the sentencing statutes, good time credits could not be used to reduce the minimum term of thirty years on a capital offense. See R. Vol. I, Doc. 8, Ex. M (Opinion No. 86-1). Thereafter, petitioner was informed that the good-time credits with which he had previously been credited had been revoked,

and that he would not be eligible for parole until he had served thirty years of his life sentence.[2]

At the evidentiary hearing, petitioner testified that when he spoke with Bogren after his arraignment, Bogren told him he could earn good time credits that would make him eligible for parole on his life sentence in ten years. Bogren, in turn, flatly denied giving petitioner any such advice. Once again, the magistrate judge made no determination as to whose testimony on this issue was the more credible.

Nonetheless, we conclude that, even if Bogren gave petitioner erroneous advice about the accrual of good time credits, petitioner is not entitled to relief. The record simply does not support petitioner's contention that he would not have pled guilty and would have gone to trial if he had known he would have to serve thirty years on his life sentence before being eligible for parole. By his own admission, petitioner told both his counsel and the prosecutor that he wanted to plead guilty because he felt he was guilty, that he was not interested in negotiating or receiving a reduced sentence, and that he would deserve every day of incarceration to which he was sentenced. Therefore, petitioner's final challenge to his guilty plea, like the others, must fail.

---

[2]    Although petitioner challenged the revocation of good time credits in district court, he has not pursued this claim on appeal. As the district court noted, this claim is governed by our opinion in Stephens.

Accordingly, the judgment of the district court is AFFIRMED.



Entered for the Court



Mary Beck Briscoe
Circuit Judge