UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MALCOLM RENT JOHNSON,

      Petitioner - Appellant,

v.

GARY L. GIBSON, Warden,

      Respondent - Appellee.

No. 96-6336
(D.C. No. CIV-94-121)
(Western District of Oklahoma)

ORDER

Filed February 26, 1999

Before **SEYMOUR**, **ANDERSON** and **LUCERO**, Circuit Judges.

This matter is before the court on petitioner Malcolm Rent Johnson's Petition for Rehearing. The petition is denied. Mr. Johnson correctly maintains, however, that the opinion of December 28, 1998, did not correctly address one issue raised in his appeal. The accompanying amended opinion addresses that issue.

The suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular active service as required by Fed. R. App. P. 35. As no member of the panel and no judge in regular active

service on the court requested that the court be polled, the suggestion is also denied.

The opinion filed on December 28, 1998, is withdrawn and reissued. A copy of the amended opinion is attached. The mandate shall issue forthwith.

ENTERED FOR THE COURT

Patrick Fisher, Clerk of Court

By:

Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 26 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MALCOLM RENT JOHNSON,

      Petitioner - Appellant,

v.

GARY L. GIBSON, Warden,

      Respondent - Appellee.

No. 96-6336

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-94-121)**

---

Vicki Ruth Adams Werneke, Assistant Federal Public Defender (Randy A. Bauman, Assistant Federal Public Defender, with her on the briefs), Death Penalty Federal Habeas Corpus Division, Oklahoma City, Oklahoma, for the Petitioner - Appellant.

William L. Humes, Assistant Attorney General (W.A. Drew Edmondson, Attorney General of Oklahoma, with him on the brief), Oklahoma City, Oklahoma, for the Respondent - Appellee.

---

Before **SEYMOUR**, **ANDERSON** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      Malcolm Rent Johnson filed an amended petition for habeas corpus

pursuant to 28 U.S.C. § 2254 in February 1994, in which he raised thirty-one

grounds of constitutional error in his conviction and death sentence. The United States District Court for the Western District of Oklahoma denied this petition in its entirety on August 12, 1996, finding some of the asserted claims procedurally barred and the rest meritless. Johnson now appeals the district court's denial of the writ, raising thirteen claims of error, alleging violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. In addressing his claims, we hold, inter alia, that a party challenging as discriminatory the exercise of peremptory challenges pursuant to Batson v. State of Kentucky, 476 U.S. 79 (1986), has the burden of production in seeking to rebut as pretextual facially neutral justifications proffered by the party exercising the challenges. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I

On the evening of October 27, 1981, Frank Thompson found his aunt, Ura Alma Thompson, an elderly white woman, deceased on the floor of her Oklahoma City apartment. Following an autopsy, the medical examiner found evidence of forcible sexual intercourse before death. He concluded that although Thompson was not strangled, she died of asphyxiation either because of pressure on her chest during the intercourse or because her assailant covered her mouth and nose.

On October 27, 1981, police arrested Johnson on an unrelated weapons charge at his apartment, where they seized several items later identified as

belonging to Thompson. On October 28, 1981, the police obtained hair, saliva, and blood samples from Johnson. In interviews with police after his arrest, Johnson denied knowledge of the homicide, but when told that semen found in Thompson's body matched his own, he reportedly responded, "you couldn't have found my semen in her, I didn't come." Trial Tr. at 913.

At the first stage of trial, Joyce Gilchrist, a state forensic chemist, testified that semen found on the bed coverings in Thompson's apartment matched Johnson's blood type. She also testified that several strands of hair found at the scene of the crime were "consistent microscopically" with petitioner's hair. Trial Tr. at 1033, 1038-39. The defense did not present any witnesses. Petitioner was found guilty on March 22, 1982.

At the second stage of trial, the state introduced evidence about Johnson's prior Illinois convictions for raping two different women, two separate charges of armed robberies, and one burglary. Four women testified that petitioner had raped or attempted to rape them or attempted to rob them with a firearm. These latter offenses were unadjudicated at the time of trial.

Sixteen of Johnson's relatives testified that he came from a broken and abusive home, and that at the age of two he spent two months, often under restraint, in the hospital for an undiagnosed debilitating illness. They also testified that Johnson, the oldest of four children, was responsible for his

siblings' care and for other household duties.  His girlfriend testified that he assumed a parental role with her five-year old son.  Neither side offered psychiatric testimony.

The court submitted three aggravating circumstances for the jury's consideration: (1) prior conviction of a felony; (2) continuing threat to society; and (3) especially heinous, cruel, or atrocious killing.  The jury rejected the third aggravator but found that the other two outweighed the evidence of mitigation.  Petitioner was sentenced to death.

## II

Before we deal with the merits of petitioner's claim, we address the applicability of the habeas corpus amendments enacted as Title I of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), signed into law on April 24, 1996.  Mr. Johnson filed this amended petition for federal habeas corpus relief in the district court on February 11, 1994.  Thus, the pre-AEDPA version of the Act applies. [1]  Cf. United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997) (citing Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997)).  We grant petitioner a certificate of probable cause as required under the pre-AEDPA version of the statute.

---

[1] The new Act amended existing habeas provisions in 28 U.S.C. §§ 2244, 2254, and 2255.

**III**

Johnson alleges that the trial court unconstitutionally denied him, an indigent defendant, the "basic tools of an adequate defense" in violation of his rights under the Due Process Clause. See Ake v. Oklahoma, 470 U.S. 68, 77 (1985) (quoting Britt v. North Carolina, 404 U.S. 226, 227 (1971)). He alleges three specific violations of Ake: denial of funds for psychiatric assistance; denial of funds for a forensic chemistry expert; and denial of funds for counsel to travel to Chicago to help prepare mitigation evidence. "In reviewing the district court's denial of [the Ake] claim, we review the court's factual findings under the clearly erroneous standard and its legal conclusions de novo." Castro v. Oklahoma, 71 F.3d 1502, 1510 (10th Cir. 1995). Because the Court decided Ake after Mr. Johnson's trial, but while his case was still pending on direct appeal, application of Ake to this case presents no retroactivity problem. See id. at 1512.

**A. Psychiatric Expert**

Johnson repeatedly requested funds to retain a psychiatric expert. The trial court denied these requests, and petitioner presented no psychiatric evidence at either the guilt or sentencing phase of trial. The district court denied habeas relief, finding that Petitioner had failed to make the requisite preliminary showing that his sanity would be a significant factor at trial.

1.  Guilt Phase

Due process requires that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Ake, 470 U.S. at 83. The defendant must, however, show more than "general allegations" and "undeveloped assertions." See Liles v. Saffle, 945 F.2d 333, 336 (10th Cir. 1991). The question in a case such as this, where "Ake was decided after trial but while direct appeal was pending," is "whether, upon review of the entire record, the habeas petitioner could have made a threshold showing under Ake that his sanity at the time of the offense was to be a significant factor at trial." Moore v. Reynolds, 153 F.3d 1086, 1109 (10th Cir. 1998).

We agree with the district court that petitioner does not make the threshold showing with respect to the guilt phase. He simply fails to present, upon consideration of the entire record, evidence that his sanity at the time of the offense was likely to be a significant factor at trial. Cf. Castro, 71 F.3d at 1513-14. Although petitioner offers an expert neuropsychological evaluation as evidence of the type of psychiatric testimony he would have presented, this report

-6-

presents no evidence tending to demonstrate that he was incompetent at the time of the crime.   See Moore, 153 F.3d at 1109.

2. Sentencing Phase

Johnson further contends that the denial of funds for psychiatric assistance was unconstitutional in light of the State's use of the "continuing threat" aggravating circumstance.  At the sentencing phase, the State did not present psychiatric evidence on the "continuing threat" aggravator.  It presented evidence of Johnson's prior convictions on rape, robbery, and burglary charges as well as evidence of four unadjudicated offenses including rape, attempted rape, burglary, and robbery.  We have held, however, that "[a]n expert must be appointed if the State presents evidence,   psychiatric or otherwise  , of the defendant's future dangerousness or continuing threat to society during the sentencing phase, and the indigent defendant establishes the likelihood his mental condition is a significant mitigating factor."   Castro, 71 F.3d at 1513 (emphasis added).

We conclude that Johnson has met the threshold showing of a likelihood that mental condition could have been a mitigating factor at the sentencing stage. See Moore, 153 F.3d at 1110.  He presents us with a "neuropsychological evaluation" stating he "could be treated . . . in the prison setting" in a way that "would control his behavior and especially remove the risk of further dangerous behavior."  Appellant's Br., App. 1, at 1-2.  This statement, although general and

conclusory, nevertheless rises to the level of evidence that "arguably suggests if [Johnson] were to receive proper psychiatric treatment for his mental disorders, he would be less likely to commit future crimes and, in short, would be less dangerous to society." Moore, 153 F.3d at 1110. Thus, we conclude that Johnson has established his constitutional entitlement to mental health expert assistance at the sentencing phase of trial. See Castro, 71 F.3d at 1515.

The denial of this entitlement leads us to harmless error analysis, and, in this particular context, to the following inquiry: "Do [we] harbor a significant doubt that this evidence would have caused at least one juror to choose life rather than death?" Moore, 153 F.3d at 1110 (quoting Brecheen, 41 F.3d at 1373). In this case, we can see no such doubt. Unlike in Castro, the jury's only question during deliberations shows no confusion in determining whether Johnson's crime merited the death penalty. Compare Castro, 71 F.3d at 1516, with Moore, 153 F.3d at 1110-11. Nor are we presented with a situation, where reversal of the "especially heinous, atrocious, and cruel" aggravating circumstance left the jury with only the continuing threat circumstance. Cf. Castro, 71 F.3d at 1516. The jury in Johnson's case rejected the "heinous, atrocious, and cruel" circumstance, but found the aggravating circumstances of both continuing threat and previous violent felony convictions. As in Moore, "most, if not all, of the evidence presented at the sentencing phase could . . . have been properly considered by the

-8-

jury," 153 F.3d at 1111, including Johnson's previous rapes and other violent crimes, as well as the manner of Thompson's death. Against the weight of that evidence, the mental health evidence Johnson presents to us now—none of which explains his murder of Thompson—fails to raise a significant doubt that it would have persuaded even one juror to choose the alternative sentence.     See id.

**B. Forensic Expert**

At trial, petitioner's counsel sought funds for a forensic expert to rebut the testimony of forensic chemist Joyce Gilchrist, a prosecution witness who presented evidence that hair, fiber, and semen samples found on the victim match those of petitioner. The trial court denied the request, and the district court, on two grounds, rejected petitioner's     Ake challenge to the trial court's decision.

First, the district court found that "defense counsel effectively cross-examined the [forensic] witnesses to fully develop the limitations of the tests performed on the evidence." Johnson v. Reynolds   , No. CIV-94-121-C (W.D. Okla. Aug 12, 1996) at 31 (hereinafter Mem. Op.). Second, it concluded that "in light of the entire record and the nature of the evidence presented by the prosecution at trial, petitioner has failed to establish the denial of expert assistance in developing affirmative evidence, such as testing by electrophoresis, resulted in a fundamentally unfair trial." Mem. Op. at 32 (citing        Yohey v. Collins , 985 F.2d 222, 227 (5th Cir. 1993)). These are legal conclusions that we

review de novo.  See Castro , 71 F.3d at 1510.  Without deciding the issue of whether defense cross-examination of an expert witness can be an adequate substitute for the testimony of an expert not beholden to the prosecution, we agree with the district court that the denial of expert assistance ultimately did not result in a fundamentally unfair trial.

In assessing due process challenges to denial of funds for non-psychiatric experts, "we consider three factors: (1) the effect on [the petitioner's] private interest in the accuracy of the trial if the requested service is not provided; (2) the burden on the government's interest if the service is provided; and (3) the probable value of the additional service and the risk of error in the proceeding if such assistance is not offered."   Moore , 153 F.3d at 1112 (quoting   United States v. Kennedy , 64 F.3d 1465, 1473 (10th   Cir. 1995)).

The first and second prongs of this test are easily satisfied because as the Supreme Court has held, "[t]he private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling," and although the State's    interest in financial economy may weigh against the provision of experts to indigent defendants,      its "interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases."       Ake, 470 U.S. at 78–79. Thus, the critical factor in assessing whether a particular expert is a required

"basic tool" of an adequate defense is the third prong of the test that deals with the probable value and risk of error associated with the additional assistance. See Moore, 153 F.3d at 1112.

In Kennedy, a federal non-capital defendant argued that by refusing to provide funds for additional paralegals, airfare, and accounting services, the district court violated his due process rights to "the 'basic tools' and 'raw materials integral to' the presentation of an adequate defense." 64 F.3d at 1473 (quoting Ake, 470 U.S. at 76). We found the third factor—the value of the additional service and the risk associated with its absence—dispositive because Kennedy failed to show "the value of the requested services or how their denial caused him any substantial prejudice at trial." Kennedy, 64 F.3d at 1473.

In Moore, which involved a petition for habeas corpus in a state death penalty case, we rejected a due process claim based on the denial of a forensic expert, and held that the petitioner's "arguments as to what the requested experts might have said [were] entirely speculative," Moore, 153 F.3d at 112, because he had "offered little more than undeveloped assertions that the requested assistance would be beneficial." Id. (quoting Caldwell v. Mississippi, 472 U.S. 320, 324 n.1 (1985)).

Here, petitioner offers evidence—letters from two forensic experts—raising arguments that go beyond the level of bare speculation about whether expert

testimony would have rebutted the prosecution's testimony about the hair and fiber evidence. Other than merely undermining certain aspects of the prosecution's forensic evidence, however, petitioner's proffered expert rebuttal evidence does not purport to show that he could not have committed the crime. Therefore, upon review of the record we conclude that petitioner fails to show that denial of his request for expert assistance substantially prejudiced his case at the guilt phase of trial. See Moore, 153 F.3d at 1112; Kennedy, 64 F.3d at 1473.

### C. Travel Funds

Petitioner alleges that by denying his requests for funds to travel to Chicago, Illinois, to gather mitigating evidence for the second stage of trial, the trial court deprived him of his right to an adequate defense. We agree with the district court that petitioner fails to show how this ruling substantially prejudiced his defense. Cf. Kennedy, 64 F.3d at 1473.

### IV

Petitioner claims that the prosecutor's use of peremptory challenges to strike all three black jurors on the venire, resulting in the selection of an all-white jury, violated Batson v. State of Kentucky, 476 U.S. 79 (1986). Petitioner exhausted this claim in the state courts; it is not procedurally defaulted.

Johnson's conviction was on direct appeal when the Supreme Court issued Batson.[2] Accordingly, the Oklahoma Court of Criminal Appeals (OCCA) remanded the Johnson proceeding for an evidentiary hearing on his claim that race discrimination tainted the jury selection process. At the hearing, petitioner established that the prosecution exercised its peremptory challenges in a manner that gave rise to the inference that it "exclude[d] the [black] venire members from the petit jury on account of their race." United States v. Johnson, 941 F.2d 1102, 1107 (10th Cir. 1991). The defendant therefore made a prima facie case of a Batson violation. See Batson, 476 U.S. at 97. The burden then shifted to the prosecutor to present a "neutral explanation for his action." Id. at 100. Following the prosecutor's explanations, the trial judge concluded that "the State has met its burden of proof and . . . there was no purposeful discrimination in the exercise of [] peremptory challenges against black persons." Tr. of Hr'g Nov. 13, 1986, at 34 (hereinafter Batson Tr.).[3]

---

[2] Although Batson had not been decided at the time of voir dire in this case, there is no dispute that it applies here. In Griffith v. Kentucky, 479 U.S. 314, 328 (1987), the Supreme Court held that Batson "is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final" at the time of the Batson decision.

[3] The Oklahoma Court of Criminal Appeals concluded that "[t]he [prosecutor's] explanations were both neutral and logical based upon the record before him." Johnson v. State, 731 P.2d 993, 999 (Okla. Crim. 1987).

-13-

On habeas review, we presume the state court's factual determinations to be correct unless we find that they are not fairly supported by the record. See Sena v. New Mexico State Prison, 109 F.3d 652, 653 (10th Cir. 1997). In addition, Batson cautions us to review with deference the ultimate factual finding that there was no intentional discrimination. See Batson, 476 U.S. at 98 n.21.

Petitioner now offers troubling evidence of the pretextual character of the prosecutor's ostensibly neutral reasons. A black juror and a white juror shared similar characteristics; the prosecutor, relying on those characteristics, struck only the black juror. Cf. Turner v. Marshall, 121 F.3d 1248, 1251-52 (9th Cir. 1997) (finding allegedly race-neutral reasons for peremptory challenge pretextual by comparing shared characteristics of struck minority juror and empaneled nonminority juror). Our review of the record, however, shows that petitioner did not raise this pretext argument at the evidentiary hearing on the Batson claim. Therefore, although it appears that the record may provide support for petitioner's pretext argument, we cannot reverse the state court's factual findings at this stage. To do so would require us to hold that the Batson inquiry imposes an independent duty on the trial court to pore over the record and compare the characteristics of jurors, searching for evidence of pretext, absent any pretext argument or evidence presented by counsel. We cannot reconcile such an approach with the Supreme Court's directive that "the ultimate burden of persuasion regarding racial

-14-

motivation rests with, and never shifts from, the opponent of the strike." Purkett

v. Elem, 514 U.S. 765, 768 (1995).

## V

Petitioner raises a due process claim based on allegations of prosecutorial

misconduct.  Petitioner claims that the prosecutor engaged in misconduct when he

referred to the police chemist's testimony as "conclusive."  Petitioner also notes

that although the state had refused to provide him with expert assistance, the

prosecutor told the jury at sentencing that petitioner offered no medical testimony

in mitigation.  Petitioner also objects to a number of other allegedly prejudicial

remarks at trial.  The district court found that petitioner procedurally defaulted his

challenge to all of these remarks but one.

First, we address the district court's finding of procedural bar.  "On habeas

review, we do not address issues that have been defaulted in state court on an

independent and adequate state procedural ground, unless cause and prejudice or a

fundamental miscarriage of justice is shown."  Steele v. Young, 11 F.3d 1518,

1521 (10th Cir. 1993) (citations omitted).  Johnson's claims stemming from the

prosecutor's comments about the State's forensic evidence and Johnson's failure

to put on medical testimony in support of mitigation are not procedurally barred.

The district court, however, found that the remaining alleged instances of

misconduct, save one, had been procedurally barred by Oklahoma's application of

-15-

a contemporaneous objection rule. At trial, Johnson's counsel failed to object to all of the alleged instances of misconduct except for a disparaging reference to defense counsel. Johnson raised allegations of prosecutorial misconduct on direct appeal, but the OCCA did not address the claim. He raised the claim again in his application for post-conviction relief, and the OCCA ruled on it, stating: "We have reviewed the alleged erroneous comments and find that defense counsel failed to object to all of the remarks except one, and that when he objected to the one comment the trial court sustained the objection and admonished the jury to disregard it. Consequently, this assignment is without merit." Johnson v. State, No. PC-88-90, slip op. at 1 (Okla. Crim. Mar. 16, 1988). The OCCA's language appears to support the inference that it barred all the claims save one under a contemporaneous objection rule.

Johnson, however, alleges that the OCCA did not in fact apply a contemporaneous objection rule, but instead actually reviewed all of the allegedly erroneous comments under a "fundamental error" standard of review. Fundamental error review implicates the merits of federal constitutional claims and as such is not an independent state ground for decision. Johnson cites Oklahoma cases standing for the proposition that prosecutorial misconduct is reviewed on appeal for fundamental error even absent contemporaneous objection. The fundamental error exception does not apply, however, to claims raised for the

first time in post-conviction proceedings.     See Brecheen v. Reynolds, 41 F.3d 1343, 1354 n.10 (10th Cir. 1994).

Johnson's argument that the Oklahoma court in fact reviewed the claims of misconduct on the merits is not supported by the court's language. Moreover, the court stated that the prosecutorial claim was "[t]he one new assignment" raised by petitioner, further suggesting that it treated the claim as one raised for the first time in post-conviction proceedings and thus not subject to fundamental error review.

Consequently, given that the court applied a procedural bar, the question then is whether that bar was an adequate state ground for the denial of relief. If Oklahoma does not consistently apply a contemporaneous objection rule to claims of prosecutorial misconduct, then this cannot be an adequate state ground for barring the claim. See Steele, 11 F.3d at 1522. However, the cases cited by Johnson as permitting "fundamental error" review, even absent contemporaneous objection, all arise on direct appeal and not in post-conviction proceedings. See, e.g., Paxton v. State, 867 P.2d 1309, 1330 (Okla. Crim. 1993) (direct appeal); McCarty v. State, 765 P.2d 1215, 1220 (Okla. Crim. 1988) (same); Hammer v. State, 760 P.2d 200, 203 (Okla. Crim. 1988) (same); West v. State, 764 P.2d 528, 529 (Okla. Crim. 1988) (same); Williams v. State, 658 P.2d 499, 500 (Okla. Crim. 1983) (same). We have previously noted that the Oklahoma Court of Criminal

-17-

Appeals' application of procedural bar in post-conviction proceedings to "fundamental error" issues not presented on direct review does not appear to be inconsistent. See Steele, 11 F.3d at 1522 n.5.

Petitioner accurately points out, however, that he did not fail to raise the numerous alleged instances of prosecutorial misconduct, but rather the OCCA simply did not address them. See Johnson v. State, 731 P.2d 993, 1001-1002 (Okla. Crim. 1987) (addressing appellant's arguments C.IV and E.I, but not discussing appellant's Section D, relating to prosecutorial misconduct). Moreover, petitioner raised this omission in a petition for rehearing as provided for by the Rules of the Oklahoma Court of Criminal Appeals. Petitioner raised the prosecutorial misconduct claim at all possible junctures on direct appeal, and he offers evidence that Oklahoma courts do review such claims for fundamental error—a review that necessarily includes review for federal constitutional error and is not independent, see Brecheen 41 F.3d at 1353-54—even absent contemporaneous objection at trial. Accordingly, we cannot conclude that the court's application of the contemporaneous objection rule in post-conviction proceedings was an adequate and independent instance of procedural bar. See Brecheen, 41 F.3d at 1354 & n.10. Yet, we should note that while we conclude that there is no procedural bar to review of the remarks not objected to at trial, that failure is nevertheless relevant to our analysis of the fundamental fairness or

unfairness of the entire trial under Donnelly v. DeChristoforo, 416 U.S. 637 (1974).

We turn to the merits of petitioner's claims of prosecutorial misconduct. Johnson contends that the allegedly improper remarks regarding forensic and psychiatric assistance violated a specific constitutional right to an adequate defense. Perforce, he argues, to establish a claim for habeas relief he need not show that the entire trial was rendered fundamentally unfair. See Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990). As we have concluded that the denial of expert assistance did not infringe on a specific constitutional right, see infra Section III, we must review the allegedly improper conduct to determine whether it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. In making that determination, we consider all of the surrounding circumstances, including the strength of the State's case. See Coleman v. Brown, 802 F.2d 1227, 1237 (10th Cir. 1986).

With respect to the prosecutor's disparaging remarks about defense counsel, after careful review of the totality of circumstances of the trial, we agree with the district court that the comments, while improper, did not—given the trial court's admonition to the jury to disregard the remark—render petitioner's trial

fundamentally unfair.   See Donnelly , 416 U.S. at 643-44;   Brecheen , 41 F.3d at 1354-55.

Johnson also contends that the district court erred in considering separately the three surviving allegations of prosecutorial misconduct: exploitation of his indigence at the first and second phases of trial, and the disparaging remarks about defense counsel.  He additionally claims that the district court erred in failing to consider, cumulatively with these instances, those instances it found procedurally barred.  We agree that, under these circumstances, application of the procedural bar rule was inappropriate.  Yet even considering the entire catalog of allegedly prejudicial prosecutorial comments taken as a whole, the alleged misconduct is similar to that which we held, in    Brecheen , not to constitute a due process violation under   Donnelly , 416 U.S. at 643  .  See Brecheen , 41 F.3d at 1354-56. Particularly in light of the totality of the evidence presented at trial, trial counsel's failure to object to all but one of the comments, and the trial court's immediate admonition to the jury when counsel did object, we conclude that the allegedly improper remarks at issue do not, individually or collectively, rise to the level of prejudice that the Supreme Court has suggested could amount to a due process violation.  See Darden v. Wainwright  , 477 U.S. 168, 181-82 (1986);   Brecheen , 41 F.3d at 1356.

## VI

Petitioner insists that the State's failure to prove and the trial court's failure to properly instruct the jury regarding his intent to kill violated his rights under the Eighth Amendment. See Enmund v. Florida, 458 U.S. 782 (1982) (holding class of murderers who did not intend to kill cannot be constitutionally guilty of capital murder). This claim, which appears to us essentially a challenge to Oklahoma's capital felony murder statute, has been dispositively answered. The Supreme Court in Tison v. Arizona, 481 U.S. 137 (1987), rejected the claim that Enmund required felony murder statutes to incorporate a specific "intent to kill requirement" as prerequisite to a death sentence:

> [T]he reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

Id. at 157. See also United States v. McVeigh, 153 F.3d 1166, 1195 (10th Cir. 1998) ("'[I]ntent to kill' need not be incorporated into the jury instructions during the guilt phase of a capital case if it is not an element of the charged crime."). The jury was instructed that it should find the defendant guilty if it found beyond a reasonable doubt that he "did . . . . willfully and unlawfully kill Ura Alma Thompson, [b]y asphyxiation with his hands inflicting mortal wounds which caused her death . . . . [w]hile in the commission of Forcible Rape in the First

-21-

Degree." Direct Crim. Appeal, R. at 129. Such an instruction is sufficient to satisfy the requirements of Tison, and the evidence presented at trial supports this conclusion. See McVeigh, 153 F.3d at 1196.

## VII

Johnson claims that his death sentence violated Beck v. Alabama, 447 U.S. 625 (1980), because the trial court failed to instruct the jury on lesser included offenses of second degree murder and first degree manslaughter. The district court found this claim procedurally barred, but Johnson argues that his appellate counsel's failure to raise this ostensibly dispositive issue amounted to constitutionally ineffective assistance sufficient to show cause and prejudice to overcome procedural default. See Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) ("An appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner.'") (quoting United States v. Cook, 45 F.3d 388, 394-95 (10th Cir. 1995)). Thus, the inquiry into cause and prejudice upon an allegation of ineffective assistance of appellate counsel requires assessment of whether the omitted claims were indeed "clearly meritorious." See Banks, 54 F.3d at 1515.

In United States v. McVeigh, the defendant argued that it was unconstitutional under Beck to force the jury to choose between convicting him of a capital offense and acquitting him. See 153 F.3d at 1197. We ruled that the case

was "unlike Beck, however, because the jury here was not compelled to impose the death penalty on McVeigh if it convicted him of the charged offenses; rather, it had the opportunity to reject the death penalty during the sentencing phase."     Id. (citing  Hopkins v. Reeves , 118 S.Ct. 1895, 1901-02 (1998)).  The jury in Johnson's case, like that in    McVeigh , had the opportunity to reject the death penalty during the sentencing phase.  Thus Johnson's     Beck argument is clearly insufficient to constitute the sort of "dead-bang winner" sufficient to show cause and prejudice to overcome procedural bar.

## VIII

We consider next whether the trial court lacked subject matter jurisdiction to try the defendant because he was charged with felony murder by an information that did not set forth all of the elements of the underlying felony of rape, and therefore was fatally and jurisdictionally defective under Oklahoma law.     The district court found this claim to be procedurally barred under state law because petitioner raised it for the first time on application for post-conviction relief.     See Johnson v. State  , 823 P.2d 370, 372 (Okla. Crim. 1992) (holding claims procedurally barred).

Petitioner contends that, because the Oklahoma Court of Criminal Appeals recognizes jurisdictional flaws sua sponte, citing     Duvall v. State  , 869 P.2d 332 (Okla. Crim. 1994), procedural bar is not applied consistently to "the type of claim

-23-

at issue." See Steele, 11 F.3d at 1522 ("We have found state procedural bar rules inadequate to preclude federal review where the state court has not applied the bar 'strictly or regularly' to the type of claim at issue.") He argues further that application to his case of Parker v. State, 917 P.2d 980 (Okla. Crim. 1996), which overturned previous Oklahoma law holding defects in an information to be jurisdictional in nature, is barred on retroactivity grounds. Therefore, he contends, his claim should be treated as jurisdictional and hence not barred by an allegedly inadequate state procedural bar. Cf. Brecheen, 11 F.3d at 1522. Alternatively, petitioner argues the issue is meritorious and default is traceable to ineffective assistance of appellate counsel, and thus cause and prejudice exist to overcome procedural bar. See Banks, 54 F.3d at 1514-15.

Even assuming, arguendo, that petitioner's claim is not procedurally barred, it fails to constitute a claim upon which habeas relief can be granted. Insofar as petitioner challenges the adequacy of the information under Oklahoma law, this is a question of state law. On federal habeas review, we are not empowered to correct all errors of state law. See Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998). "[W]e may grant habeas relief to a state prisoner only if state court error deprived him of fundamental rights guaranteed by the Constitution of the United States." Id. (citation and internal quotation omitted). A charging instrument may violate the Sixth Amendment by failing to provide a defendant

with adequate notice of the nature and cause of the accusations filed against him. See, e.g. , Hunter v. State , 916 F.2d 595, 598 (10th Cir. 1990). The information in this case, however, was adequate to provide petitioner with notice of the charges against him. Therefore, even if not procedurally barred, the defects alleged here do not rise to the level of a federal constitutional violation.

## IX

The claim that the trial court submitted duplicative and cumulative aggravating circumstances to the jury is meritless. As the federal district court correctly noted, the aggravating circumstance of future dangerousness and prior felony conviction are not duplicative. The former is supported by evidence of the petitioner's potentiality for future dangerous acts, the latter by evidence of petitioner's past acts. See, e.g. , Berget v. State , 824 P.2d 364 (Okla. Crim. App. 1991).

Petitioner relies on McCullah v. United States , 76 F.3d 1087 (10th Cir. 1996), in support of his contention that the aggravating factors found in his case were duplicative. However, in McCullah , one statutory factor, intent to kill or to employ lethal force, "substantially overlap[ped]" the other, non-statutory, factor—that the defendant has "committed the offenses as to which he [was] charged in the indictment"—a circumstance that necessarily incorporated the element of intent. Id. at 1111. Additionally, in McCullah , the district court

submitted one statutory factor, intentional conduct intending that the victim be killed, along with a second, intentional conduct done with knowledge of grave risk of death, that was necessarily subsumed within the first.     See id.

Likewise, in Davis v. Executive Director of Dept. of Corrections , 100 F.3d 750 (10th Cir. 1996), we addressed "two aggravators addressing the same basic conduct," id. at 774—felony murder and murder in the course of kidnaping, where the kidnaping was necessarily the felony underlying the felony murder factor. The aggravating factors of past felony and future dangerousness do not, in their definition, necessarily incorporate common factors, nor do they necessarily address the same basic conduct. Here, although the jury may have relied on some of the same evidence—namely petitioner's past felony convictions—in finding the aggravating circumstance of future dangerousness, it did not necessarily have to find one in order to find the other.     See id. Therefore, this is not a situation where a single aggravator has been counted twice, thereby unconstitutionally     skewing the jury's process of weighing aggravating and mitigating factors.     Cf. Stringer v. Black , 503 U.S. 222, 230-32 (1992).

## X

We have previously rejected petitioner's challenge to the use of unadjudicated offenses to support the continuing threat aggravating circumstance. See Williamson v. Ward , 110 F.3d 1508, 1523 (10th Cir. 1997).

## XI

Pre-indictment delay rises to the level of a constitutional violation when it results in substantial prejudice to the defense, or upon a showing that the reasons for the prosecutor's delay were improper. See Gutierrez v. Moriarty, 922 F.2d 1464, 1473 (10th Cir. 1991). Neither requirement has been established in the case before us. We agree with the district court that petitioner's claim arising from his 7-day detention prior to being taken before a magistrate does not rise to the level of prejudice or improper purpose rendering the delay a constitutional violation.

## XII

Johnson argues that the district court erred in denying his request for an evidentiary hearing on the issues raised by the denial of funds for expert assistance. In support, Johnson states he was prevented from developing and presenting evidence in support of claims regarding denial of funds for a forensic expert, denial of funds for a psychiatrist, denial of funds to investigate mitigating evidence, ineffective assistance of appellate counsel, and ineffective assistance of trial counsel. More specifically, Johnson alleges that he was denied the opportunity to present evidence demonstrating ineffective assistance of trial counsel arising out of the denial of funds for expert assistance and travel to gather mitigation evidence.

We review the district court's denial of an evidentiary hearing for abuse of discretion.  See Lasiter v. Thomas , 89 F.3d 699, 702 (10th Cir. 1996).  The district court found that no issues of fact were disputed, and thus the habeas petition could be resolved "on the basis of the record and the law," requiring no evidentiary hearing.  Mem. Op. at 2.  "If no facts are disputed and the issues can be resolved on the basis of the record and the law, no evidentiary hearing is required."  Scrivner v. Tansy , 68 F.3d 1234, 1242 (10th Cir. 1995).   Our independent review shows that the record was sufficient to resolve all issues raised by Johnson.  Despite petitioner's attempts to characterize his request for an evidentiary hearing as stemming from an ineffective assistance claim, the alleged instances of deficient performance on which petitioner seeks an evidentiary hearing all pertain to the denial of funds for psychiatric expert assistance and travel.  The issue of whether Johnson had a constitutional right to funds for expert assistance is a legal one, see Castro , 71 F.3d at 1510, as is the question of whether erroneous denial of such assistance was constitutionally harmless,     see id. at 1515-16.  Therefore, in the absence of disputed material facts, Johnson did not have a right to an evidentiary hearing, and the district court did not abuse its discretion in denying him one.        See Lasiter , 89 F.3d at 703;   Scrivner , 68 F.3d at 1242;   cf.  Siripongs v. Calderon  , 35 F.3d 1308, 1314 (10th Cir. 1994).

-28-

## XIII

In a July 5, 1996, motion, petitioner sought to dismiss his appointed lead counsel in the federal habeas action, Thomas M. Lahiff, and substitute Lahiff's co-counsel, Vicki Werneke of the Office of the Federal Public Defender, as lead counsel. We consider the argument that the district court's denial of petitioner's pro se motion to dismiss appointed counsel and appoint substitute counsel constitutes grounds for remand to the district court. [4] The district court denied the motion on the grounds "[p]etitioner fails to indicate service of the motion on current counsel and the motion was filed by petitioner long after the briefing was completed on his petition for habeas relief." Mem. Op. at 73. Shortly thereafter, on August 27, 1996, the district court granted Lahiff's motion to withdraw, stating that "[t]he Office of the Federal Public Defender will continue to represent Mr. Johnson." R., Doc. 39, at 1.

Although habeas petitioners have no independent Sixth Amendment right to counsel, see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), they are afforded by statute, 21 U.S.C. § 848(q)(4)(B), "a mandatory right to qualified legal counsel

---

[4] In amending 28 U.S.C. § 2254, AEDPA added 28 U.S.C. § 2254(i), which provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." In cases such as this one, however, we follow instead the dictate of Lindh v. Murphy, 117 S.Ct. 2059, 2067-68 (1997), to apply pre-AEDPA law. See infra Section II.

and related services '[i]n any [federal] post conviction proceeding.'" McFarland v. Scott , 512 U.S. 849, 854 (1994) (footnote omitted). We agree with the Eighth Circuit that this statute implicates the same substitution-of-counsel standards as does the Sixth Amendment. See Hunter v. Delo , 62 F.3d 271, 274 (8th Cir. 1995). These standards require that "[t]o warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Padilla , 819 F.2d 952, 955 (10th Cir. 1987). The district court is under a duty to "make formal inquiry into the defendant's reasons for dissatisfaction with present counsel when substitution of counsel is requested." Id. at 956 n.1.

Although it appears that the district court failed to make the required inquiry, petitioner's claim is moot, as he is now represented by the substitute counsel he requested. His claims that Lahiff's performance was, essentially, so ineffective as to violate McFarland v. Scott are too lacking in specificity to support a conclusion that he was prejudiced by Lahiff's allegedly deficient performance. Although we agree with petitioner that counsel could have raised his Batson and subject matter jurisdiction claims in a more comprehensive fashion in his petition, given our resolution of those issues today, we cannot say he was prejudiced by the presentation of those issues below.

-30-

## XIV

We have previously rejected the argument that a trial court violates the Eighth and Fourteenth Amendment by failing to inform the jury that it has the option of returning a life sentence even upon a finding of an aggravating circumstance. See Duvall v. Reynolds, 139 F.3d 768, 789-91 (10th Cir. 1998). The jury instruction to which Johnson objects is identical to the instruction upheld against Eighth and Fourteenth Amendment challenges in Duvall. See 139 F.3d at 790.

## XV

The final issue before us is the contention that the prosecution withheld, in violation of Brady v. Maryland, 373 U.S. 83 (1963), exculpatory evidence corresponding to three items requested in peititoner's Motion for Discovery:

> 17. The name of any criminal defendants prosecuted in the last eighteen (18) months by the Oklahoma County District Attorney's Office for raping women fifty-five (55) years or older.
> 18. A list of any alleged suspect to this crime before the apprehension of Malcolm Johnson.
> 19. All information regarding any unsolved rapes occurring on the north side of Oklahoma City from January 1, 1980 to January 15, 1982 involving rapes of women over fifty-five (55) years old.

Direct Crim. Appeal R. at 19.

To establish a Brady violation, the petitioner must show that evidence was: (1) suppressed by the prosecution; (2) favorable to petitioner; and (3) material. See Stafford v. Ward, 59 F.3d 1025, 1027 (10th Cir. 1995). The third element,

-31-

materiality, requires "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting United States v. Hughes , 33 F.3d 1248, 1251 (10th Cir. 1994)).  We take the district court's view that petitioner has failed to establish the materiality of the information requested.    See Kyles v. Whitley , 514 U.S. 419, 434-37 (1995) (discussing elements of materiality analysis).

Petitioner is correct that a request for specific information, as opposed to a general request for "all    Brady  evidence," can lower the threshold of materiality necessary to establish a violation.    See Smith v. Secretary of New Mexico Dept. of Corrections , 50 F.3d 801, 826-27 (10th Cir. 1995).  But even in light of this consideration, we agree that defendant has failed to show a reasonable probability of a different result had the alleged information been disclosed.  Petitioner argues that evidence of other rape defendants and suspects might have rebutted the evidence of prior, uncharged rapes brought against him during the sentencing phase.  This argument is simply too speculative to establish a reasonable probability of a different outcome.  Petitioner fails to show how the information regarding unsolved rapes would have been material to his case.

We consider the contention that the prosecution withheld information regarding one Lamar Hamilton—information perhaps suggesting that he was possibly a suspect in the additional, uncharged rapes used against Johnson during

-32-

the sentencing phase of trial. Failure to disclose the arrest of other suspects for the same crime can violate Brady. See Banks v. Reynolds, 54 F.3d 1508, 1517-18 (10th Cir. 1995). Petitioner concedes, however, that the prosecution did furnish trial counsel with Hamilton's name. This would appear to satisfy item 18 of his specific requests. We are not told of the materiality of additional information regarding Hamilton's arrest records.

Petitioner apparently contends that his inability to point to specific exculpatory evidence stems from the failure of his previous habeas counsel to file a motion for discovery in the district court. While such a failure, if unexcused, might go to a claim of ineffective assistance, assuming such a claim were cognizable in this context, it cannot create a showing of exculpatory, material evidence where there is none.

Nor are we told of the material relevance of copies of "the crime incident report, the report from Mr. Johnson's arrest, and the inventory sheet of the items removed from Mr. Johnson's apartment." Appellant's Supp. Br. at 6. Brady does not require the prosecution to "make a complete and detailed accounting to the defense of all police investigatory work on a case." Banks, 54 F.3d at 1517 (quoting Moore v. Illinois, 408 U.S. 786, 795 (1972)). The district court's determination that petitioner has failed to show how these items are either favorable or material will not be disturbed.

Considering the allegedly suppressed evidence collectively, see Kyles, 514 U.S. at 436-37, we conclude that the government in this case did not fail to disclose known, favorable evidence "rising to a material level of importance." Id. at 438-39.

## XVI

The judgment of the district court is **AFFIRMED**.