**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ADAM VALDEZ,

            Petitioner-Appellant,

v.

DAVID R. McKUNE; ATTORNEY
GENERAL OF KANSAS,

            Respondents-Appellees.

No. 07-3251

(D. Kansas)

(D.C. No. 06-CV-3103-JTM)

---

**ORDER**

---

Before **HENRY**, Chief Judge, **TYMKOVICH,** and **HOLMES**, Circuit Judges.

---

Adam Valdez, a prisoner in the custody of the Kansas Department of

Corrections, seeks a certificate of appealability ("COA") to appeal the district

court's orders (a) denying his 28 U.S.C. § 2254  petition for a writ of habeas

corpus and (b) denying his motion to alter or amend its initial decision.  For the

reasons set forth below, we conclude that we lack jurisdiction to review the

district court's initial order denying Mr. Valdez's § 2254 petition.  As to the

court's denial of his motion to alter or amend, Mr. Valdez had failed to advance a

colorable argument in support of his contentions of error.  We therefore deny Mr.

Valdez's application for a COA and dismiss this matter.

## I. BACKGROUND

The underlying facts are set forth in the Kansas Supreme Court's opinion in State v. Valdez, 977 P.2d 242 (Kan. 1998). Mr. Valdez was charged in the District Court of Finney County, Kansas with a series of crimes arising out of death of Juan Ayon on February 4, 1996. Mr. Valdez was seventeen years old at the time of the alleged offenses. The Finney County court certified Mr. Valdez to stand trial as an adult, and a jury convicted him of the following offenses: first-degree premeditated murder (in violation of Kan., Stat § 21-3401(a)); aggravated kidnapping (in violation of Kan. Stat. § 21-3421); conspiracy to commit murder in the first degree (in violation of Kan. Stat. § 21-3302); conspiracy to commit aggravated kidnapping (in violation of Kan. Stat. § 21-3302); aggravated robbery (in violation of Kan. Stat. § 21-3427); and aggravated battery (in violation of Kan. Stat. § 21-3414(a)(1)(A)).

The court then imposed a range of sentences: life imprisonment (for first-degree premeditated murder); ninety-seven months, consecutive to murder sentence (for aggravated kidnapping); seventy-three months, concurrent with the kidnapping sentence (for conspiracy to commit murder); forty-nine months, concurrent with conspiracy to commit murder sentence (for conspiracy to commit aggravated kidnapping); forty-nine months consecutive to the previous sentences

(for aggravated robbery); and forty-three months, consecutive to the previous sentences (for aggravated battery). Mr. Valdez appealed his convictions and sentences, and the Kansas Supreme Court affirmed. See Valdez, 977 P.2d at 251-262.

Mr. Valdez then sought post-conviction relief in the Kansas state courts. The Kansas Court of Appeals concluded that Mr. Valdez's convictions for conspiracy to commit first-degree murder and conspiracy to commit aggravated kidnapping were multiplicitous because they were based on a single continuing conspiracy. Accordingly, the Court of Appeals reversed Mr. Valdez's conviction for conspiracy to commit aggravated kidnapping. Valdez v. State, No. 88,728, unpublished opinion, filed July 3, 2003. However, the Kansas courts rejected Mr. Valdez's other claims.

Subsequently, Mr. Valdez filed a pro se 28 U.S.C. § 2254 petition in the federal district court. In that petition, Mr. Valdez asserted that (1) the state district court erred in certifying him as an adult; (2) the court erred in denying his motions to acquit; (3) the court erred in admitting the results of DNA testing; (4) the court erred in ordering a witness, Jose Avalos, to testify at trial after the witness invoked his Fifth Amendment privilege; (5) the court erred in admitting evidence of Mr. Valdez's gang affiliation; (6) the court erred in overruling Mr. Valdez's objections to the prosecutor's closing argument; (7) the court committed cumulative error; (8) the court erred in imposing a "hard forty" sentence (i.e.,

forty years without parole); (9) he received ineffective assistance of trial and appellate counsel; (10) the charging document was constitutionally deficient; (11) his convictions were based on perjured testimony; and (12) the prosecutor engaged in misconduct.

In a May 31, 2007, memorandum opinion and order, the district court rejected all of Mr. Valdez's claims. The court applied the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that habeas corpus relief is available only if the state court's decision is "contrary to" or "an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).

Mr. Valdez did not file a timely appeal of the district court's May 31, 2007 order. Instead, on June 17, 2007, he submitted a motion to alter or amend judgment. There, he requested the court to reconsider its decisions as to the fourth and tenth claims set forth above and as to one of his allegations of prosecutorial misconduct. On July 26, 2007, the district court denied Mr. Valdez's motion to alter or amend. On August 27, 2007, Mr. Valdez filed a timely notice of appeal of the July 26, 2007 order.

## II. DISCUSSION

In order to obtain a COA, Mr. Valdez must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Valdez may make this showing by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that [the] petitioner will not prevail." Id. at 338.

### A. Jurisdiction

Initially, we note that we lack jurisdiction to review the district court's May 31, 2007 order. Under Rule 4 of the Federal Rules of Appellate Procedure, Mr. Valdez was required to file a notice of appeal of that ruling "within 30 days after the judgment or order appealed from is entered." FED. R. APP. P. 4 (a)(1)(A). However, as noted above, Mr. Valdez did not file a notice of appeal until August 27, 2007, more than thirty days after the district court's May 31, 2007 order.

Under Rule 4(a)(4)(A) of the Federal Rules of Appellate Procedure, the time for filing a notice of appeal may be extended if the appealing party files

certain types of post-judgment motions in the district court. Those time-extending motions include motions to alter or amend a judgment under Fed. R. Civ. P. 59 and motions for relief under Fed. R. Civ. P. 60(b), if the Rule 60 motion "is filed no later than 10 days after the judgment is entered." FED. R. APP. P. 4(a)(4)(A)(iv), (vi). In those instances, the time for filing the notice of appeal runs from the date that the district court decides the post-judgment motion. FED. R. APP. P. 4(a)(4)(A).

Here, Mr. Valdez did not file a post-judgment motion within the time period that would have extended the time for filing a notice of appeal. In particular, his motion to alter or amend the judgment was filed outside the ten-day period for filing a Rule 59 motion to alter or amend the judgment and for filing a Rule 60 motion that would extend the time for filing a notice of appeal. See Allender v. Raytheon Aircraft Co., 439 F.3d 1236, 1241 (10th Cir. 2006) (holding that an untimely Rule 59(e) motion does not toll the time for filing a notice of appeal). Accordingly, we lack jurisdiction to review the district court's May 31, 2007 order, and we may only review the district court's order denying Mr. Valdez's motion to alter or amend judgment.

### B. Ordering a Witness to Testify at Trial

In his motion to alter or amend, Mr. Valdez first argued that the trial court violated his right to a fair trial by ordering a witness, the co-defendant Jose Avalos, to testify. The Kansas Supreme Court rejected this argument on the

grounds that Mr. Valdez lacked standing. See Valdez, 977 P.2d at 258 (stating that "'[t]he right against self-incrimination is personal to the witness, and the defendant in a criminal action has no standing to assert the witness's privilege"). In the instant habeas corpus proceeding, the federal district court agreed. See Rec. doc. at 18, at 2 (stating that Mr. Avalos's initial refusal to testify was based on his Fifth Amendment rights and that "[t]he privilege against self-incrimination is solely for the benefit of the witness and is a purely personal privilege of the witness, not for the protection of other parties") (quoting United States v. Skolek, 474 F.2d 582, 584 (10th Cir. 1973)).

Our review of the record indicates that Mr. Avalos, like Mr. Valdez, was initially charged with the murder of Mr. Ayon and related crimes. Mr. Avalos entered a guilty plea and agreed with the government to testify at Mr. Valdez's trial. However, at the trial, Mr. Avalos's attorney informed the court that Mr. Avalos "has told me that he does not wish to testify" and that "I don't know if there is a privilege or not." State Ct. Rec. vol. IX, at 138. In response, the prosecution argued that it had entered into an agreement with Mr. Avalos under which he would "take the witness stand, when subpoenaed, and testify truthfully." Id. at 147. The prosecution further argued that by giving prior testimony at an inquisition, Mr. Avalos had waived his Fifth Amendment privilege as to the matters about which he testified.

Upon considering these arguments, the trial judge ruled that "Mr. Avalos should be and he is hereby ordered to testify." State Ct. Rec. vol. X, at 10. The court reasoned that Mr. Avalos "had previously waived his privilege against self-incrimination by testifying under oath regarding his involvement in the murder of Ayon at [Mr.] Valdez's preliminary examination." Valdez, 977 P.2d at 257 (summarizing the trial court's ruling). However, the court limited the scope of his testimony to "statements made to law enforcement, statements made in the inquisition[,] and any statements that may have been overheard by law enforcement." State Ct. Rec. vol. X, at 11.

After the judge ruled, Mr. Avalos again announced that he would not testify. The judge asked,, "Are you invoking any privileges at this time, or just refusing to testify?" Id. at 14   Mr. Avalos responded, "Just refusing." Id. The judge then told Mr. Avalos's attorney to "try to advise him that he needs to testify." Id. at 144. The judge added, "[I]f [Mr. Avalos] continues to refuse to testify, then I will take other measures while he is in custody waiting the Court's final sentence . . . for any contempt that he continues to . . . reflect on this Court." Id.

Upon conferring with his attorney, Mr. Avalos changed his mind. His attorney informed the court that "[Mr. Avalos] can be made to testify involuntarily and will now do so." Id. at 152. Mr. Avalos proceeded to testify on behalf of the state, and his testimony implicated Mr. Valdez in the murder of Mr.

-8-

Ayon and the accompanying crimes. See Valdez, 977 P.2d at 248 (summarizing Mr. Avalos's statements).

In the instant habeas corpus proceeding, we are not entirely persuaded by the conclusion of the Kansas Supreme Court and the federal district court that Mr. Valdez lacks standing to challenge the trial judge's decision to order Mr. Avalos to testify. As the district court noted, our precedent does state that "[w]here the witness is not the party, the party may not claim the [Fifth Amendment privilege against self incrimination] nor take advantage of an error of the court in overruling it" and that" [t]he party, as contrasted to the witness, simply lacks standing." Skolek, 474 F.2d at 584. However, in more recent cases, we have further noted that a defendant may assert that his right to a fair trial has been violated by the use of testimony that has been unlawfully compelled from government witnesses. See Clanton v. Cooper, 129 F.3d 1147, 1157-58 (10th Cir. 1997) (holding that, "because the evidence is unreliable and its use offends the Constitution, a person may challenge the government's use against him or her of a coerced confession given by another person"); see also United States ex rel. Cunningham v. DeRobertis, 719 F.2d 892, 896 (7th Cir. 1983) ("We conclude that petitioner is correct about the general proposition that a violation of another's Fifth Amendment rights may rise to the level of a violation of his own right to a fair trial.").

Nevertheless, even assuming that Mr. Valdez has standing to challenge the trial judge's ordering Mr. Avalos to testify, we conclude that the denial of that claim is not debatable among jurists. In particular, Mr. Valdez has failed to make a colorable argument that Mr. Avalos's testimony was improperly coerced. He has not disputed the government's contention that Mr. Avalos had agreed to testify, nor does he offer any legal argument challenging the trial court's ruling that Mr. Avalos had waived his Fifth Amendment rights by testifying about the murder in pretrial proceedings. See United States v. Wise, 603 F.2d 1101, 1104 (4th Cir.1979) (agreeing with the district court that a witness had "waived his [F]ifth [A]mendment privilege by entering into the plea agreement requiring him to cooperate with the government and by testifying to his participation in the [crime] when he entered his guilty plea"). Absent any such argument, we discern no support for Mr. Valdez's contention that the introduction of Mr. Avalos's testimony deprived Mr. Valdez of his right to a fair trial.

## C. Alleged Prosecutorial Misconduct

In his motion to alter to amend, Mr. Valdez further argues that the prosecutor engaged in misconduct by making a deal with one of the government's witnesses, Carlos Valencia, and by presenting perjured testimony. For the reasons set forth by the district court, we conclude that this argument is also not debatable among reasonable jurists. See Miller-El, 537 U.S. at 336. The record does not indicate that Mr. Valencia's testimony regarding an agreement with the

government was false, that it was material, and that the prosecution knowingly used perjured testimony. See United States v. Wolny, 133 F.3d 758, 762 (10th Cir. 1991) (explaining the elements of a due process claim alleging the use of perjured testimony by the government).

### D.  Allegedly Deficient Charging Document

Finally, in his motion to alter or amend, Mr. Valdez argues that the count of the information charging conspiracy to commit first-degree murder was fatally defective because it did not allege an overt act.  Again, we agree with the district court's analysis of this claim.  In order to obtain habeas relief on this claim, Mr. Valdez must establish that the charging document failed to provide him with "adequate notice of the nature and cause of the accusations filed against him." Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999).  A violation of state law requirements for charging documents is not sufficient. Id.  Here, the information provided sufficient notice of the charge.

### III.  CONCLUSION

Accordingly, we DENY Mr. Valdez's application for a COA and DISMISS this matter.  Appellant's motion to file a supplemental brief is GRANTED.

Entered for the Court,

Elisabeth A. Shumaker

Elisabeth A. Shumaker
Clerk of Court

-11-